317 F.2d 838
 Carl H. BORAK, for and on behalf of himself and all of the other common stockholders of J. I. Case Company who are similarly situated to him, Plaintiff-Appellant,
v.
J. I. CASE COMPANY, a Wisconsin corporation et al., Defendants-Appellees.
 No. 13947.
 United States Court of Appeals Seventh Circuit.
 May 29, 1963.
 
 COPYRIGHT MATERIAL OMITTED Alex Elson, Arnold I. Shure, Chicago, Ill., Bruno V. Bitker, Milwaukee, Wis., Elson & Lassers, Willard J. Lassers, Aaron S. Wolff, Chicago, Ill., for plaintiff-appellant.
 H. Maxwell Manzer, Madison, Wis., Ray T. McCann, Walter S. Davis, Milwaukee, Wis., for appellees.
 Peter A. Dammann, Gen. Counsel, David Ferber, Associate Gen. Counsel, Michael Joseph, Atty., Washington, D. C., S. E. C., for Securities and Exchange Commission, amicus curiae.
 Before DUFFY and KILEY, Circuit Judges, and MERCER, District Judge.
 FREDERICK O. MERCER, District Judge.
 Plaintiff, Carl H. Borak, the holder of 2,000 common shares of J. I. Case Company, hereinafter referred to as Case, commenced this suit below on November 13, 1956, by filing his complaint in which he sought to have the then proposed plan of merger between Case and American Tractor Corporation, hereinafter ATC, declared illegal and void and to have Case and its officers and directors enjoined from taking any action to consummate the plan. Injunctive relief was denied. Subsequently plaintiff has filed three amended and supplemental complaints, the third of which was filed on January 12, 1962. It is that complaint which gives rise to this appeal. That complaint is in two counts, the first of which is based upon the laws of the state of Wisconsin and invokes the court's jurisdiction on the basis of diversity of citizenship. The second count purported to allege violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78j (b), 78n(a), and the jurisdiction of the court over that count is asserted to exist by reason of the provisions of Section 1331 and Section 1337 of the Judicial Code, 28 U.S.C.A. §§ 1331, 1337, and Section 27 of the Securities Exchange Act. 15 U.S.C.A. § 78aa.[1]
 After the third amended complaint was filed, the defendants[2] filed a motion for an order to compel plaintiff to provide security for expenses incurred and to be incurred by the defendants in defending the suit to comply with the provisions of Wis.Stat. § 180.405(4).[3] After a hearing upon that motion the court filed an opinion holding that the only cause of action stated in count 1 of the complaint was derivative in nature and that the Wisconsin security for expense statute applied thereto, that count 2 does not state a cause of action under Section 10b of the Act,[4] that the only relief which it had jurisdiction to grant under Section 14(a)[5] of the Act was a declaratory judgment as to the validity or invalidity of the proxies involved in the suit, and that, insofar as count 2 prayed relief other than such a declaratory judgment, that count also stated a derivative cause of action under Wisconsin law, which was subject to the provisions of the Wisconsin security for expense statute. Accordingly, the court ordered plaintiff to furnish a bond in the amount of $75,000.00, conditioned for the payment of expenses to be incurred by the defendants in defending the suit. Upon plaintiff's refusal to provide security in accordance with that order, the court ordered that count 1 of the complaint be dismissed and that count 2 thereof likewise be dismissed, except to the extent that that count might be construed as a suit under Section 14(a) for a declaratory judgment as to the validity of the proxies solicited for the Case-ATC merger. This interlocutory appeal was then taken pursuant to the provisions of 28 U.S.C.A. § 1292(b) and the order of this court, entered October 24, 1962, granting to plaintiff leave to appeal.
 Three issues are presented on this appeal. First, did the court below err in its conclusion that the cause of action stated in count 1 of the complaint was derivative in nature and therefore subject to the provisions of Wisconsin security for expense statute? Second, did the court below err in its holding that the Wisconsin statute applies to count 2 of the complaint insofar as that count sought retrospective relief? Third, did the court below err in holding that count 2 of the complaint did not state a cause of action under Section 10(b) of the Securities Exchange Act?
 With respect to count 1 of the complaint, the only issue before us for decision is the question whether the court correctly held the provisions of the Wisconsin statute applicable to plaintiff's cause of action. As the court recognized in its opinion, that issue depends upon a determination whether the allegations of the complaint state a derivative cause of action brought on behalf of the corporation, or a primary cause of action to redress an injury to plaintiff as a Case stockholder. If the cause of action stated is derivative, then the statute was properly applied. If it is not derivative, but is a primary right in the plaintiff, the statute has no application.
 Plaintiff's first amended and supplemental complaint asserted a derivative cause of action on behalf of the corporation. After the court ruled that the Wisconsin statute applied to the case and ordered plaintiff to furnish bond in the amount of $75,000.00, plaintiff amended his complaint in an attempt to allege the denial of his preemptive right to participate in the issuance of Case shares and an injury to himself, individually, as a shareholder of Case. He supported that allegation by the reallegation of essentially the same material facts which were alleged in the first amended complaint.[6]
 In holding the Wisconsin statute applicable to count 1 of the third amended complaint, the court below said, in part:
 "After reviewing the allegations of count 1, it is clear to us that the plaintiff still complains of fraud and self-dealing, failure of directors to perform their fiduciary duties, etc., as in the first amended and supplemental complaint, and seeks redress for the alleged wrong in behalf of the corporation. He does not allege any wrong to himself different from that suffered by other stockholders, nor limit the relief sought to damages sustained by reason of loss of pre-emptive rights. He is concerned in our opinion not with the fact that stock was issued to others without being first offered to Case stockholders but with the fact that stock was issued for an allegedly insufficient consideration. We therefore hold that § 180.405(4) was applicable, that count 1 set forth a derivative cause of action and that the plaintiff must furnish security for reasonable expenses."
 The principle that directors of a corporation owe a fiduciary duty to the corporation and the stockholders thereof, to deal honestly in corporate affairs is hornbook law requiring no citation of authority. As it affects the rights of shareholders, that duty has a two-fold aspect. Except where the right has been abolished by statute, or, where permissible, by provision in a corporate charter, the shareholders of a corporation have a preemptive right to participate ratably in the issuance of new shares of the corporation if they desire so to do. E. g., Luther v. C. J. Luther Company, 118 Wis. 112, 94 N.W. 69; Spaulding v. North M. & T. S. Co., 106 Wis. 481, 494, 81 N.W. 1064; Hammer v. Werner, 239 App.Div. 38, 265 N.Y.S. 172. In addition to the preemptive right, the directors and officers of a corporation owe a fiduciary duty to not use their positions for their own personal advantage, or for the advantage of others, to the detriment of the interests of the stockholders of the corporation. E. g., Luther v. C. J. Luther Co., supra, 94 N.W. at 72; Hammer v. Werner, supra; Schwab v. Schwab-Wilson Mach. Corp., Ltd., 13 Cal. App.2d 1, 55 P.2d 1268. A breach of the duty owed to the shareholders of a corporation in that respect gives rise to a cause of action by the shareholders in their own right. Ibid. Count 1 of this complaint must be measured in the light of those established legal principles.
 We are indebted to Judge Tehan for the following summary of the allegations of count 1 of the complaint which, with slight embellishment, is taken verbatim from his memorandum.
 Count 1 of the complaint alleges that plaintiff, the owner of 2,000 shares of Case common stock acquired prior to the merger complained of, sues in a representative capacity on behalf of himself and all other common stockholders prior to the merger except those participating in or cognizant of the wrongdoing alleged. In addition to Case, he joins as defendants certain of its directors and former directors, some of whom are also officers and former officers, and the executor of the estate of a deceased director. Defendants who are now directors of Case are sued individually and as directors, the defendant Rojtman is sued individually and as representative of American Tractor Corporation shareholders receiving Case stock as the result of the merger between Case and American Tractor Corporation, and the defendant Beeber is also sued, individually and as representative of holders of certain purchase warrants. In Count 1, the plaintiff alleges substantially as follows: In October 1956, Case formally announced to its shareholders a proposed plan of merger between Case and American Tractor Corporation and proposed stock option amendments, which were purportedly approved by Case shareholders on November 15, 1956. The merger was purportedly consummated on January 10, 1957. Both the merger and stock option plan were effectuated by illegal and fraudulent acts and illegally deprived the plaintiff and other shareholders similarly situated of their preemptive right — rights which the plaintiff here seeks to enforce. Under the merger and plan, 648,852 shares of common stock and 1,197,704 shares of second preferred stock were set aside or issued without granting the plaintiff's class their pre-emptive rights to subscribe thereto.
 The plaintiff then describes in some detail the acts which he believes to have resulted in a violation of the pre-emptive rights of Case shareholders as follows: In 1954, Elliott's company and a syndicate headed by him acquired 170,000 shares of American Tractor Corporation stock. Elliott violated the Securities Act of 1933 and regulations thereunder in connection with that stock and the sale of a portion thereof. Thereafter, the market price of American Tractor Corporation stock, most of which was held by Elliott, Rojtman and their associates, began an unreasonable rise, due to illegal manipulations, which manipulations Elliott was aware of prior to the merger. Rojtman, Brown, Grede and the Case management also knew prior to the merger that the market price of ATC stock was achieved illegally and artificially. Since the merger one person has been found guilty in another district court of manipulating ATC stock from May, 1955 to February, 1956; and Gilligan, Will and Company, formerly defendant in this cause and the specialist in ATC stock on the American Stock Exchange was found by the Securities and Exchange Commission to have engaged in improper and illegal activities while specialist with respect to ATC stock.
 Case directors violated Wisconsin law and breached their fiduciary duties to the shareholders in approving the merger by including future earnings of American Tractor Corporation and future services of its officials as partial consideration for issuance of Case stock, by agreeing to issue Case stock at less than par value, by failing to evaluate properly the American Tractor Corporation assets acquired and paying an excessive price for American Tractor Corporation, by over-valuing American Tractor Corporation's and undervaluing Case's earnings and book value resulting in a fraud on Case shareholders, by relying on market price of American Tractor Corporation stock as a measure of American Tractor Corporation's value, by relying on American Tractor Corporation's own appraisal of its physical assets and failing to examine that appraisal, by considering future earnings as an element of value and by failing to recognize the necessity of future investments as part of the cost of the merger.
 Case directors breached their fiduciary duties by approving and issuing a letter and proxy statement of October 15, 1956, prior to the meeting at which the merger was approved which contained numerous material omissions and false and misleading statements relied upon by Case shareholders in approving the merger and without which the merger would not have been approved. Three pages of the complaint are given over to instances thereof.
 For example, it is alleged that defendants failed to disclose that the total purchase price of ATC exceeded $17,000,000, that the book value of Case common stock was $36.00 and ATC's only $1.15, that persons who negotiated the merger were recipients of stock options; and that one of the director defendants, as a supplier, would receive a substantial increase in business as a result of the merger, the merger was fair because in accordance with the comparative market prices of the two stocks, and the Case common shareholders would not be adversely affected when in fact their proportionate interest in the earnings, book value and voting power were seriously diluted.
 Both the Case and American Tractor Corporation management groups were guilty of self dealing in connection with the plan and merger.
 The conduct of the defendants, the plaintiff claims, constitutes actual or constructive fraud on himself and other shareholders similarly situated depriving them of their pre-emptive rights. He claims that if they had been permitted to purchase stock issued in the merger on the same basis as American Tractor Corporation shareholders, they could have obtained one-fourth share of common stock and one-half share of second preferred stock for $2.20 for each share of Case common stock held by them at the time of the merger.
 In Paragraph 19 of Count 1 of his complaint, the plaintiff alleges facts occurring after the merger particularly, that Brown, Grede, Rojtman and other principal defendants were no longer with Case and that Case was nearly bankrupt, in Paragraph 20 he alleges that the class he represents has been irreparably damaged by failure to recognize pre-emptive rights, and in his prayer for relief he asks that the court enter judgment in favor of the class he represents and against Case directors who approved the merger and all defendants the court finds responsible for the merger and the consequent deprivation of pre-emptive rights in an amount to be determined and/or that the court enter a decree directing Case to issue to the class he represents such securities of Case as the court deems necessary to compensate the class for violation of pre-emptive rights, and asks for such other relief as equity shall require.
 Judge Tehan was correct in his conclusion that the facts alleged in count 1 are basically consistent with the statement of a derivative cause of action to redress a wrong to the corporation, but that conclusion does not resolve the issue which is before us. Those same facts may also state a primary cause of action by a stockholder for relief from injury to himself resulting from unlawful and fraudulent practice. Hammer v. Werner, 239 App.Div. 38, 265 N.Y.S. 172; Schwab v. Schwab-Wilson Mach. Corp., Ltd., 13 Cal.App.2d 1, 55 P.2d 1268; Hagan v. Superior Court of Los Angeles County, 53 Cal.2d 498, 2 Cal.Rptr. 288, 348 P.2d 896, 898.
 In Hagan, for example, shareholders of a corporation intervened in a suit for dissolution of the corporation, alleging that the directors who had filed the suit for dissolution refused to recognize them as shareholders of the corporation, and that some of the directors had been parties to a scheme to fraudulently divert funds from the corporation to the detriment of the rights of the shareholders. The trial court ordered the plaintiffs to provide security for costs of the suit pursuant to the provisions of the California Corporations Code. The shareholders then filed a prohibition suit in the California Supreme Court alleging that the trial court had threatened them with contempt if they sought to take any further action in the dissolution suit without first complying with the order to provide security for costs. In granting the writ of prohibition, the court held, 348 P.2d at 898, that the security statute did not apply to the intervening shareholders who were seeking to vindicate their own rights, even though their complaint in intervention alleged facts which would also give rise to a cause of action by the corporation.
 We think the trial court failed to recognize the principle that the same allegations of fact might support either a derivative suit or an individual cause of action by shareholders. We think count 1 of the complaint adequately states a cause of action for the redress of rights individual to the Case stockholders.[7]
 Defendants' contentions that plaintiff is affected by the circumstances alleged in the same way as all stockholders of Case are affected, and that his suit is therefore, derivative, fails to take into account the realities of the circumstances alleged and the clear indication to the contrary of the Wisconsin decisions. If the allegations of the complaint are true, as we must assume them to be for present purposes, two separate categories of Case shareholders must be recognized, namely, those shareholders who participated in the practices alleged and benefited by the merger and related agreements and those shareholders who were not participants, with the result, as it is alleged, that their proportionate interest in the corporation was diluted. The former are expressly excluded from the class which plaintiff purports to represent. In this respect, this complaint cannot be distinguished from the complaint in Luther v. C. J. Luther Co., supra, in which a part of the shareholders were aligned as plaintiffs against others as defendants.[8]
 One further contention of the defendants must be noted. They argue, citing Dousman v. Wisconsin & L. S. M. & S. Co., 40 Wis. 418, 422, that an individual cause of action to redress a violation of the rights of shareholders must be brought against the corporation alone. That position is not valid. In most of the cases in which courts have taken jurisdiction to vindicate the rights of shareholders, the suit has been against the corporation involved and its directors or other persons alleged to have been responsible for the injury. E. g., Luther v. C. J. Luther Co., supra; Hammer v. Werner, supra; Schwab v. Schwab-Wilson Mach. Corp., Ltd., supra. A director of a corporation acts as a fiduciary not only to the corporation but also to the stockholders, and the essence of a cause of action by a stockholder, based upon allegations of fraudulent acts by a director, is not the fraud against the corporation, but the fraud of the director as it affects the stockholders. Schwab v. Schwab-Wilson Mach. Corp. Ltd., supra, 55 P.2d at 1269. While Dousman does contain statements which tend to support defendants' argument, such statements must be read in the light of the fact that only the corporation was named as a defendant in that suit. Moreover, to the extent that Dousman is authority for the proposition that a suit by an individual stockholder lies only against the corporation, its weight as authority is certainly undermined, if not overruled, by the later decisions in Luther and other Wisconsin cases.
 We hold that count 1 of the complaint does state a cause of action on behalf of the stockholders individually, and that the court erred in holding that the provisions of the Wisconsin statute are applicable thereto.
 In considering the correctness of the court's decision as it relates to count 2 of the complaint,[9] an analysis of the court's opinion in the light of the procedural history of the case places the issues in perspective. The plaintiff's original complaint and his first amended complaint were based upon allegations of violations of state law, federal jurisdiction being predicated upon diversity of citizenship. After the court had held that the Wisconsin statute applied to the cause of action, plaintiff obtained leave to file his second amended complaint alleging both a violation of state law and a violation of the Securities Exchange Act. That complaint set forth both of those alternative causes of action in a single count, alleging, insofar as the Securities Exchange Act was concerned, a violation of Section 14(a). On January 2, 1962, upon a hearing on defendants' motion to compel a bond for expenses under the Wisconsin statute, the court ordered that plaintiff file a third amended complaint stating, in separate counts, the alternative causes of action under state law and under Section 14(a). At the same time, the court asked the plaintiff to consider the application to his cause of action of the decision in Dann v. Studebaker-Packard Corp., 6 Cir., 288 F.2d 201.
 Thereafter the third amended and supplemental complaint was filed. As the jurisdictional basis for count 2, plaintiff asserted diversity of citizenship between the parties, Section 27 of the Securities Exchange Act and Sections 1331 and 1337 of the Judicial Code. 28 U.S.C.A. §§ 1331, 1337.
 By reference, plaintiff realleged substantially all of the charging paragraphs contained in count 1 of the complaint. He alleged that the merger between Case and ATC was consummated early in 1957, following its approval by a vote of two-thirds of the outstanding common and preferred shares of Case at a special stockholders meeting held for that purpose. The count alleged that the proxy solicitation material issued by the defendants prior to that special meeting was false and misleading and its use constituted a violation of Section 14(a) of the Act and the SEC Rules promulgated thereunder. 17 CFR 240.14a-3, 140.14a-9. The theory of the cause of action stated in that count was the contention that the Case-ATC merger and stock option agreements approved by the vote of proxies given by shareholders of Case in response to allegedly unlawful proxy solicitation material were void agreements under the provisions of Section 29(b) of the Act. 15 U.S.C.A. § 78cc(b). Plaintiffs sought relief declaring that the proxy solicitation material was false and misleading, that the proxies solicited thereby were illegal and void, and that the merger and all agreements entered into pursuant thereto were void. He also prayed damages for injuries sustained by himself and all other stockholders similarly situated which grew out of violation of the Act, and such other and further relief as equity might require.
 In ruling upon the defendants' motion for security and in holding that the Wisconsin statute applied in part to count 2 thereof, the court relied upon the decision in the Dann case. Thus the court held that federal jurisdiction in a civil action for violation of the provisions of Section 14(a) is limited to the granting of prospective relief, i. e., a declaration of the validity of the proxy solicitation material as the merits of the cause might require. The court further held that count 2, insofar as it alleged a cause of action for damages and relief other than a declaratory judgment of the invalidity of the proxy solicitation material, was a suit arising under state law to which the Wisconsin statute applied. Finally, the court held that the allegations of count 2 did not state a cause of action for violation of Section 10(b) of the Act.
 We think the court correctly held that Section 10(b) of the Act has no application to the facts alleged in the complaint at bar. That section and Rule 10 (b)-5, promulgated thereunder, 17 CFR 240.10b-5, prohibits the use of manipulative and deceptive devices in connection with the purchase or sale of securities, and afford a basis for a civil remedy for damages and other relief to persons injured by the use of such practices. E. g., Ellis v. Carter, 9 Cir., 291 F.2d 270; Smith v. Bear, 2 Cir., 237 F.2d 79, 60 A.L.R.2d 1119; Hooper v. Mountain States Securities Corp., 5 Cir., 282 F.2d 195; cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. We need not consider whether misleading proxy material may, under any circumstances, constitute a manipulative and deceptive device within the prohibition of that Section, and we express no opinion upon that subject. We hold only that the facts alleged in this complaint directly invoke the provisions of Section 14(a), and that only sheer speculation can bring the provisions of 10(b) into play.[10]
 The critical issue with respect to the decision below as it relates to count 2 is the question whether the trial court correctly held that federal jurisdiction in a civil cause of action for enforcement of the provisions of Section 14(a) is limited to declaratory relief. Since the court below relied in its decision on the Dann case, we approach that issue from an analysis of Dann.
 The complaint in Dann, filed by a stockholder of Studebaker, alleged the waste and dissipation of Studebaker assets growing out of a fraud upon the shareholders of Studebaker, which allegedly resulted from the use of false and misleading proxy solicitation materials. The complaint predicated jurisdiction upon the provisions of Section 27 of the Act and Section 1331 of the Judicial Code. The complaint prayed that the court declare void proxies solicited in violation of the provisions of Section 14(a), and, in the event that the court found that such void proxies had controlled the vote of Studebaker stockholders approving the arrangement between Studebaker and Curtiss-Wright Corporation of which complaint was made that the court would, by its decree, restore Studebaker to its economic condition which had obtained prior to consummation of the arrangement with Curtiss.
 The trial court dismissed the complaint. The Court of Appeals reversed, holding that a cause of action was stated under Section 14(a). Thus the court held that a civil suit by a shareholder will lie to enforce the provisions of that section. The court, however, having determined that a federal cause of action was stated by the complaint, then addressed itself to the question whether it had jurisdiction to grant the relief sought in the complaint. 288 F.2d at 210-215. In reliance upon language contained in the opinion in Gully v. First National Bank, 299 U.S. 109, 117-118, 57 S.Ct. 96, 81 L.Ed. 70, the court concluded that federal jurisdiction under Section 14(a) is limited to declaratory relief related to the validity or invalidity of proxies obtained in violation of the Act. Thus the court said, 288 F.2d at 214:
 "* * * In reaching this decision, we are deciding that federal jurisdiction must end with the holding of a contested proxy election, that the right created by Section 14 (a) of the Exchange Act is only broad enough to permit consideration of the validity of the proxies solicited in violation thereof, but it is not broad enough to permit the federal courts to determine the consequent effects of the validity or invalidity of said proxies."
 Finally, the court held that the right to damages and other retrospective relief arising out of a violation of 14(a) is a question of state law, because such a remedy requires the interpretation and application of state, as well as federal law.
 We respectfully disagree with the decision in Dann for two reasons. First, the court failed to note a critical distinction between the jurisdictional facts of Gully and Dann, namely, that a federal statute was involved only collaterally in the former, whereas the whole right of action in the latter was derived from a federal statute.
 Gully was a suit by a state to collect local taxes levied against a national bank. The only ground upon which federal jurisdiction could be claimed was the fact that the bank had been chartered under an Act of Congress. Upon that factual background, the court held that the case arose under state law, uninfluenced by the fact that a federal statute had a collateral bearing thereon.[11]
 By contrast, in Dann the complaint alleged a direct violation of a federal statute. Thus the controversy is a basic one requiring the interpretation and application of a federal statute. The rationale of Gully has no bearing upon the jurisdictional question.
 Second, in our opinion, the court in its reasoning failed to distinguish between the question of jurisdiction and the question upon the merits of the case whether the plaintiffs were entitled to the relief which they sought. See, concurring opinion, Miller, C. J. 288 F.2d at 217, 218.
 
 
 1
 Section 14(a) prohibits the solicitation of proxies of securities listed on a national exchange in violation of SEC Rules promulgated thereunder. Rule 14a-9 prohibits the use of false and misleading statements with respect to any material fact or the omission of material facts which would render any statement contained in a proxy solicitation false or misleading. 17 CFR 240.14a-9.
 
 
 2
 Section 27 of the Act vests exclusive jurisdiction in the United States District Courts over violations of the Act or SEC Rules and over all suits in equity or actions at law brought to enforce any liability or duty created by the Act or SEC Rules.
 
 
 3
 The obvious purpose of Section 14(a) is the protection of the right of shareholders to a full and fair disclosure of all material facts which affect corporate elections by proxy. Dann v. Studebaker-Packard Corp., supra, 288 F.2d at 208. See also SEC v. Transamerica Corp., 3 Cir., 163 F.2d 511, 518, cert. denied 332 U.S. 847, 68 S.Ct. 351 92 L.Ed. 418. For the achievement of that purpose, the jurisdiction conferred by Section 27 must be broad enough to effectively protect that right. Thus, it is said in Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939, that federal courts have the power, under a general grant of jurisdiction to enforce a federal statute, to grant all of the relief which may be commensurate with the effective enforcement of the statute and the protection of rights created thereby, notwithstanding the failure of the statute to specify the remedies which may be employed.
 
 
 4
 Indeed, Section 27 has many times been so construed in cases arising under Section 10(b), the courts holding that the jurisdictional grant includes the power to award damages and other retrospective relief. E. g., Ellis v. Carter, 9 Cir., 291 F.2d 270; Hooper v. Mountain States Securities Corp., 5 Cir., 282 F.2d 195, cert. denied 365 U.S. 814, 81 S.Ct 695, 5 L.Ed.2d 693; Smith v. Bear, 2 Cir., 237 F.2d 79; Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783; Kohler v. Kohler Co., E.D.Wis., 208 F.Supp. 808, 820. In at least two cases decided prior to Dann, the courts assumed the existence of power under Section 27 to award retrospective relief by whatever remedy might be necessary in a particular case to protect the rights created under Section 14(a). SEC v. Transamerica Corp., 3 Cir., 163 F.2d 511, 518, cert. denied, 332 U.S. 847, 68 S.Ct. 351; Mack v. Mishkin, S.D.N.Y., 172 F.Supp. 885, 889. Contra, Howard v. Furst, S.D.N.Y., 140 F.Supp. 507, aff'd on other grounds, 2 Cir., 238 F. 2d 790, cert. denied 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759.
 
 
 5
 In Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189, the Court, applying the provisions of the Securities Act of 1933, which were similar to the provisions of Section 27, held that purchasers of securities sold in violation of the Act had a civil cause of action, not only against the vendor of the securities and other persons specified in Section 12(2) of the 1933 Act, but also against a third person having assets of the vendor in its possession. The court said, in part, 311 U.S. at 288, 61 S.Ct. at 233: "The power to enforce implies the power to make effective the right of recovery afforded by the Act. And the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case * * *."
 
 
 6
 In other cases the courts have held a general grant of jurisdiction to the district courts to enforce a federal statute effective to authorize the appointment of a receiver in a suit for violation of the Investment Company Act of 1940,[12] Aldred Investment Trust v. S. E. C., 1 Cir., 151 F.2d 254, 261, cert. denied 326 U.S. 795, 66 S.Ct. 486, 90 L.Ed. 483, a decree of restitution of rents collected in excess of the maximum rents permissible under the Emergency Price Control Act of 1942,[13] Porter v. Warner Holding Company, 328 U.S. 395, 66 S.Ct. 1086, 90 L. Ed. 1332, a decree of restitution for loss of wages resulting from a violation of the Fair Labor Standards Act of 1938,[14] Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291, 80 S.Ct. 332, 4 L.Ed.2d 323, and a decree of divestiture of property held in violation of Sections 1 and 2 of the Sherman Act.[15] Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245.
 
 
 7
 We think the same principle must be applied in determining the scope of federal jurisdiction for the protection of rights created by Section 14(a). We hold that the court below has jurisdiction under Section 27 to award damages or such other retrospective relief to the plaintiff as the merits of the controversy may require.
 
 
 8
 The court below erred in holding the Wisconsin statute applicable to count 2. McClure v. Borne Chemical Co., 3 Cir., 292 F.2d 824, cert. denied 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339; Fielding v. Allen, 2 Cir., 181 F.2d 163, cert. denied, sub nom Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600.
 
 
 9
 The order dismissing plaintiff's third amended complaint is reversed, and the cause is remanded to the court below for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331(a)
 "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C.A. § 1337.
 "The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. * * *" 15 U.S.C.A. § 78aa.
 
 
 [2]
 The identity of persons who have from time to time been named defendants in this suit has varied in the several amended complaints. Since the precise identity of the persons who are defendants has no particular bearing upon the issues presented on this appeal, the term "defendants", when used in this opinion, is a reference to all persons who were so named at any particular stage of the proceedings below as the context may require
 
 
 [3]
 "In any action brought in the right of any foreign or domestic corporation by the holder or holders of less than 3 per cent of any class of shares issued and outstanding, the defendants shall be entitled on application to the court to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees. * * *" Wis. Stat. 1961, § 180.405(4)
 This statute is sometimes in the opinion referred to as "the Wisconsin statute", without more precise description thereof.
 
 
 [4]
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * *
 "(a) * * *
 "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.A. § 78j (b).
 
 
 [5]
 "(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security * * * registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.A. § 78n(a)
 
 
 [6]
 Plaintiff filed this suit as a class action on behalf of himself and all other Case shareholders who are similarly situated. For convenience in this opinion, however, the singular "plaintiff" is used, with no reference being made to the class which he purports to represent, except where the context otherwise requires
 
 
 [7]
 Our conclusion is based upon the impression of the complaint as a whole, and it should not be construed as precluding the possibility that count 1 might contain specific allegations which are consistent with a derivative cause, only, and which are subject to being stricken as surplusage
 
 
 [8]
 Closely related to that contention is the defendants' argument that a class suit will not lie for the redress of shareholders' rights. However, that argument does not affect the merit of the complaint as stating a primary cause of action, and we express no opinion as to the validity of the argument. If the argument is valid, it may be presented to the court below upon a proper motion directed against the complaint
 
 
 [9]
 We are aided in our consideration of this issue by an exhaustive brief filed by the Securities and Exchange Commission as amicus curiae
 
 
 [10]
 The second amended complaint alleged a violation of Section 14(a) only. After plaintiff was directed to file a third amended complaint stating his alternative causes of action in separate counts, and after plaintiff had been requested to consider the impact of the Dann decision upon his complaint, he filed his third amended complaint in which he alleged the violation of 10(b) as well as 14(a). We think it not unreasonable to infer, as Judge Tehan did, that 10(b) was alleged in an attempt to circumvent Dann
 It also appears that count 2 was muddied by the allegations of diversity of citizenship for the same purpose. In the reasoning of the Dann opinion leading to the conclusion that there was no jurisdiction to award the relief prayed upon the merits of the complaint, the court observed that there was no allegation of diversity of citizenship to support jurisdiction over what the court construed to be a cause arising under state law. Plaintiff argues, or implies, that the court predicated its decision that there was no federal jurisdiction upon the lack of diversity allegations. He seeks to distinguish Dann from this complaint upon that basis. His analysis of Dann is false in that regard. The court had held that there was no jurisdiction under Section 27 of the Securities Exchange Act, and no cause of action arising under a statute of the United States. Its discussion of diversity was directed to a determination whether the allegations of the complaint would sustain federal jurisdiction to decide questions of state law. If there be jurisdiction under Section 27, that jurisdiction is neither enlarged nor diminished by the existence, or non-existence, of diversity of citizenship.
 The diversity allegations of count 2 are wholly surplusage.
 
 
 [11]
 See also, Chicago & N. W. Ry. Co. v. Toledo, P. & W. R. Co., S.D.Ill., 217 F.Supp. 64
 
 
 [12]
 15 U.S.C.A. § 80a-35
 
 
 [13]
 50 App.U.S.C.A. § 925(a)
 
 
 [14]
 29 U.S.C.A. §§ 215(a), 217
 
 
 [15]
 15 U.S.C.A. §§ 1, 2