284 N.J. Super. 168 (1995)
664 A.2d 497
JOHN GRIFFIN STRASENBURGH; JOHN A. STRASENBURGH, INDIVIDUALLY AND AS TRUSTEE FOR BLAIR BALDWIN STRASENBURGH; JOHN GRIFFIN STRASENBURGH, JR.; GEORGE GUTHRIE APPLEGATE; OLIVER JAMES STRASENBURGH; TOBY E.A. STRASENBURGH; SARA HOUGHTON STRASENBURGH; ALLISON WEBB STRASENBURGH; AMOS EIGHMY APPLEGATE, AND SAMUEL CHURCH APPLEGATE; SALLY STRASENBURGH APPLEGATE LANE, F/K/A SALLY STRASENBURGH APPLEGATE; SUSAN HUFFARD BALL, A/K/A FRANCES SUSAN WHEATON HUFFARD; COURTNEY MONTAGU HUFFARD; PAUL PHILLIPPI HUFFARD, IV; TREVOR LANSING HUFFARD; WHITNEY LANCASTER HUFFARD; ADA A. STRASENBURGH; AND JAMES A. STRASENBURGH, PLAINTIFFS-APPELLANTS,
v.
GEORGE J. STRAUBMULLER, III; ROBERT I. VEGHTE; EDWARD C. WHEATON, EDWARD SCOTT WHEATON; JOHN THOMAS WHEATON; W. GLENN GEIS; AND MICHAEL T. ZEE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1995.
Decided August 8, 1995.
*171 Before Judges MUIR, D'ANNUNZIO and EICHEN.
Peter J. Herrigel argued the cause for appellants (Pitney, Hardin, Kipp & Szuch, attorneys; Frederick L. Whitmer, on the brief).
Carl Greenberg and David J. Novack argued the cause for respondents (Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., attorneys; William D. Sanders, Mr. Greenberg and Mr. Novack, on the brief).
The opinion of the court was delivered by EICHEN, J.S.C. (temporarily assigned).
Plaintiffs are minority stockholders of Wheaton Industries of Millville, New Jersey (Wheaton), a large, privately held, family-owned company with global affiliates and subsidiaries and an income of nearly one-half billion dollars per year. Wheaton is engaged in the glass, plastic, packaging, and cartage business. Most of the plaintiffs are fourth or fifth generation descendants of Dr. Theodore Corson Wheaton, who founded the company a century ago. Defendants were all either senior officers or directors of the company who, plaintiffs allege, represent only the interests of the majority stockholders, Dr. Wheaton's third generation descendants.
Plaintiffs brought this action to recover damages individually against defendants, charging that defendants abused their "positions of power" by "misappropriating and misusing corporate assets and opportunities" and by artificially deflating the value of *172 their stock. In their complaint, plaintiffs allege that defendants "sought to reduce the value of the company's stock to... reduce [defendants'] estate and gift tax liability, and to make the company a less attractive acquisition target so as to perpetuate their control over the [c]ompany and conceal their misconduct." Plaintiffs contend that the third generation stockholders are advanced in age and benefitted from the illiquidity of the stock, whereas the fourth and fifth generation minority stockholders suffered from the effects of defendants' scheme to artificially deflate the stock. The effect of this disparate impact, plaintiffs contend, is what permits them to sue defendants individually rather than in a derivative capacity.
An eight-count amended complaint (complaint) charges a variety of specific practices by defendants which plaintiffs contend constitute common law fraud (count I), negligent misrepresentation (count II), breach of fiduciary duties (count III), waste (count IV), federal RICO violations (counts V and VI) (stayed by the federal court), and New Jersey civil RICO violations (counts VII and VIII).
The complaint states, among other things, that defendants knowingly and recklessly made materially misleading statements in annual reports and other communications to shareholders with the intent that they be deceived. The complaint charges that defendants falsely asserted that a newly created shareholders' liquidity plan would give shareholders the liquidity necessary to meet their diverse financial needs; that defendants' communications to the shareholders to that effect were false and misleading because they failed to explain the true effect of the plan; and that as a result of these deceptive communications, defendants "duped a majority of the shareholders into approving the plan." The shareholder liquidity plan apparently gave the company a ninety-day right of first refusal before shareholders could sell their shares to persons not members of the Wheaton family. The complaint alleges reliance in the retention of their stock and in failing "to take action to remedy defendants' abuses."
*173 The complaint alleges that defendants intentionally misrepresented that they would conduct a public offering of the company's stock to satisfy the shareholders' needs for liquidity and falsely promised that third party offers to purchase the company would be fairly entertained. Although several companies made attractive offers to buy Wheaton, including a British company, Bowater plc., plaintiffs contend defendants thwarted their efforts to acquire Wheaton by mischaracterizing the nature of the Bowater offer as a hostile takeover bid when it was not. The complaint alleges that defendants improperly rejected two offers to purchase the company which would have generated a price per share ranging from $65 to $80. In addition, the complaint states that defendants created a one-year voting trust, "among a group of favored shareholders" without informing plaintiffs, whereby the majority of shareholders delegated their voting rights to defendants. They claim the voting trust was foisted upon a number of shareholders under false pretenses, which conduct plaintiffs contend was designed to isolate and further injure them.
Defendants successfully moved for dismissal of the complaint for failure to state a claim upon which relief can be granted pursuant to R. 4:6-2(e). They argued that Wheaton had completed a corporate restructuring from which plaintiffs and others had dissented; that the dissenters had "made [a] formal statutory demand for payment of the fair value of their shares," pursuant to N.J.S.A. 14A:11-1 to -11 (appraisal proceeding), on the same day that they filed this action; and that by filing an appraisal proceeding, plaintiffs were "divest[ed] ... of their status as [Wheaton] shareholders," and therefore, plaintiffs no longer had any right to pursue other relief against defendants, either individually or in a derivative capacity.
In sum, defendants argued that (1) the appraisal proceeding was plaintiffs' sole and exclusive remedy; (2) plaintiffs were not current shareholders by virtue of the appraisal proceeding and, therefore, lacked standing to pursue their claims in this action, either derivatively or individually; (3) plaintiffs' claims were derivative *174 claims which could not be individually asserted because based on diminution in share value; (4) plaintiffs' claims failed to state a state civil RICO violation, N.J.S.A. 2C:41-2; (5) plaintiffs' state civil RICO claims were barred because they are derivative claims; and, (6) plaintiffs' remaining claims were too generally pleaded, and plaintiffs should not be permitted to amend their complaint to replead with more particularity.
Plaintiffs opposed the motion contending that their claims were not derivative, and even if they were, plaintiffs could also sue individually. Plaintiffs argued that their election to dissent was not a bar to the present action, which was based on antecedent events unrelated to the appraisal proceeding which had occurred before the corporate restructuring, the event that triggered the appraisal proceeding. Moreover, plaintiffs argued that if their complaint was deficient, they should be granted leave to amend the complaint. The judge heard oral argument and dismissed the complaint finding plaintiffs' claims for fraud and negligent misrepresentation "absolutely vague." The judge also dismissed plaintiffs' claims for breach of fiduciary duty, waste, and determined their civil RICO claims to be "clearly derivative."
For purposes of the motion, the judge assumed the value of the stock had been depressed by defendants' actions, as plaintiffs alleged, but found, nevertheless, that no special or specific injury had occurred to plaintiffs as opposed to the company or the shareholders generally. The record reflects that the judge considered plaintiffs' allegations to be derivative claims only, which plaintiffs could not raise because of their status as dissenting shareholders under N.J.S.A. 14A:11-5. Finally, the judge denied plaintiffs' request to replead concluding that "they had [had] plenty of time to do so...." This appeal followed.
The standard of review on defendants' motion to dismiss for failure to state a claim upon which relief could be granted, pursuant to R. 4:6-2(e), is "limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, *175 563 A.2d 31 (1989) (citation omitted). "For purposes of analysis plaintiffs are entitled to every reasonable inference of fact," and the analysis "is at once painstaking and undertaken with a generous and hospitable approach." Ibid. (citation omitted). From this perspective, we cannot agree with the motion judge's dismissal of the entire complaint at this preliminary stage of the proceedings because plaintiffs have stated causes of action based on their disparate impact theory on all but count IV of the complaint. Accordingly, we reverse the order dismissing plaintiffs' claims of common law fraud (count I), negligent misrepresentation (count II), breach of fiduciary duties (count III) and state civil RICO violations (counts VII and VIII). We affirm the dismissal of plaintiff's claims of waste (count IV).

I.
A stockholder's derivative action is "an action brought to enforce a secondary right on the part of one or more shareholders in an association, ... because the association refuses to enforce rights which may properly be asserted by it." R. 4:32-5.
Jurisdictions disagree as to whether an action brought by minority shareholders of a close corporation against the directors for breach of fiduciary duty and fraud must be brought as a derivative action or may be brought individually.
In Cowin v. Bresler, 741 F.2d 410 (D.C. Cir.1984), plaintiff, a minority shareholder, claimed that the corporation and its directors "manipulated the business for their personal profit at the expense of the minority shareholders." Id. at 412. Plaintiff alleged mismanagement, fraud, self-dealing, and breach of fiduciary duty. Ibid. The court rejected plaintiff's claims, explaining that "[w]hen an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively in behalf of the corporation." Id. at 414 (citation omitted). "[M]ismanagement which depresses the value of stock is a wrong *176 to the corporation ... to be enforced by a derivative action." Ibid., quoting Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del. 1970).
The Cowin court further explained that an individual action may be brought only if there is a "special injury" to the minority stockholder. Id. This occurs when there is either a duty to the complainant that is independent of the duty to all the shareholders, or when the injury to the shareholders is distinct from the injury to the corporation. Ibid. The court concluded that the directors' fiduciary duty to the shareholder was the same as the duty owed to the corporation and that plaintiff's claim, analogous to plaintiffs' claim here, that the company sought to artificially deflate the value of its own stock was "an allegation of harm primarily to the corporation shared by each stockholder proportionate to their holdings." Id. at 416.
This view has been adhered to in numerous cases. The Pullman-Peabody Co. v. Joy Mfg. Co., 662 F. Supp. 32 (D.N.J. 1986). Accord, Sax v. World Wide Press, Inc., 809 F.2d 610, 614 (9th Cir.1987) (depletion and diversion of corporate assets through mismanagement were injuries to the corporation, and plaintiff stockholder could not bring individual action); Kramer v. Western Pacific Indus., Inc., 546 A.2d 348, 350-53 (Del. 1988) (breach of fiduciary duty, resulting in waste of corporate assets, harmed the corporation, and plaintiff stockholder could not bring an individual action); Phoenix Airline Servs., Inc. v. Metro Airlines, Inc., 260 Ga. 584, 397 S.E.2d 699, 701-02 (1990) (breach of fiduciary duties and usurpation of corporate opportunities resulted in injury to the corporation and plaintiff stockholder could not bring individual action); Loewen v. Galligan, 130 Or. App. 222, 882 P.2d 104, 112 review denied, 320 Or. 493, 887 P.2d 793 (1994) (breach of fiduciary duty resulting only in loss of value of plaintiffs' investments is not the special injury required for an individual action).
However, other courts have allowed minority stockholders to bring actions individually for breach of fiduciary duty and fraud. In Borak v. J.I. Case Co., 317 F.2d 838 (7th Cir.1963), aff'd, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), plaintiff, on behalf *177 of himself and other similarly situated shareholders, sought to enjoin a merger which, together with a stock option plan, plaintiff contended, was effectuated by illegal and fraudulent acts which illegally deprived him and other shareholders similarly situated of their preemptive rights to subscribe to shares of stock that were issued or set aside.
The court rejected defendants' argument that the suit had to be derivative because plaintiff was "affected by the circumstances alleged in the same way as all stockholders." Id. at 845. The court determined that there were two separate categories of shareholders, those who participated in and benefitted from the merger and stock option plan and those who did not. Ibid. Thus, the court concluded plaintiff's "proportionate interest in the corporation was diluted." Ibid. The Borak court explained that "[a] director of a corporation acts as a fiduciary not only to the corporation but also to the stockholders." Ibid. The same facts may state both derivative and individual causes of action. Id. at 844-45.
Here, although plaintiffs do not allege a dilution of their proportionate interest in the corporation, nevertheless, as in Borak, supra, plaintiffs contend there are two classes of stockholders. Plaintiffs' theory is that only the majority older generational stockholders benefitted from the artificial deflation of the value of their shares because they were able thereby to maintain control of the company and minimize their estate and gift tax liability. Plaintiffs, on the other hand, suffered from the resulting financial illiquidity of their shares. This disparate impact, plaintiffs argue, constitutes a "special injury" to the minority shareholders. See also Kademian v. Ladish Co., 792 F.2d 614 (7th Cir.1986).
In Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105 (D.R.I. 1990), the court recognized that "disproportionate treatment is generally ... sufficient to confer upon the shareholders adversely affected an individual right of action against the shareholders responsible." Id. at 1113 (citations omitted). The court in Dowling, supra, noted the "rationale" underlying the rule. Ibid. *178 The court reasoned that if plaintiffs were required to bring a derivative suit, then the corporation would recover the damages, and "the defendants, as controlling shareholders, would reap much of the benefit from their alleged wrongdoing." Accord, Crosby v. Beam, 47 Ohio St.3d 105, 548 N.E.2d 217, 221 (Ohio 1989); see In re: Tri-Star Pictures, Inc., 634 A.2d 319, 330 (Del. 1993), (special injury is "a wrong suffered that is not suffered by all stockholders generally"); see also Schumacher v. Schumacher, 469 N.W.2d 793, 797-99 (N.D. 1991) (minority shareholder may bring an action directly or individually for breach of fiduciary duty by controlling shareholder in a small, closely held corporation); accord, Noakes v. Schoenborn, 841 P.2d 682, 686 (Or. Ct. App. 1992) (minority shareholder of small, closely held corporation, may bring either derivative or direct action for majority shareholder's breach of fiduciary duty).
Defendants rely on Pepe v. General Motors Acceptance Corp., 254 N.J. Super. 662, 604 A.2d 194 (App.Div.), certif. denied, 130 N.J. 11, 611 A.2d 650 (1992), for the proposition that "shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations." Id. at 666, 604 A.2d 194 (citations omitted). However, in Pepe, supra, defendant had financed plaintiffs' automobile dealerships. Id. at 664, 604 A.2d 194. Its agents, also defendants, were not insiders, directors, officers or majority shareholders; they thus owed no fiduciary duty to the plaintiffs. Cf. Francis v. United Jersey Bank, 87 N.J. 15, 36, 432 A.2d 814 (1981) (the relationship of a corporate director to the corporation and its stockholders is that of a fiduciary); Maul v. Kirkman, 270 N.J. Super., 596, 617, 637 A.2d 928 (1994) (corporate directors owe a fiduciary duty to the stockholders).
We are satisfied the complaint states causes of action for breach of fiduciary duty and negligent misrepresentation based on the special injury alleged by plaintiffs. For the same reason, we reverse the dismissal of plaintiffs' RICO claims.
*179 The judge found that plaintiffs' state civil RICO claims, N.J.S.A. 2C:41-1 to -6.2, "do not state a cause of action" and "if they exist, they are derivative." The judge did not address the sufficiency of the state civil RICO cause of action nor have plaintiffs raised the issue on appeal. Accordingly, we do not address the sufficiency of the RICO cause of action.
N.J.S.A. 2C:41-4(c) provides that "[a]ny person damaged in his business or property by reason of a violation of N.J.S. 2C:41-2 [prohibited activity] may sue therefor in any appropriate court." The federal statute, 18 U.S.C.A. § 1964(c), has the same language. Although federal courts, in interpreting the statute, have consistently held that stockholders whose only injury is a decline in the value of their shares have no standing to bring a RICO action, see, e.g., Roeder v. Alpha Indus., Inc., 814 F.2d 22, 29-30 (1st Cir.1987) (decline in the value of plaintiff's stock affected stockholders generally and thus constituted an injury to the corporation), some courts have recognized a RICO cause of action where a plaintiff can demonstrate "specific direct harm to her personally". See, e.g., Small v. Goldman, 637 F. Supp. 1030, 1031 (D.N.J. 1986).
Here, as in Small, supra, plaintiffs have asserted direct injury to themselves individually as the result of alleged RICO violations because of the claimed disparate impact of defendants' artificial deflation of the stock. Thus, plaintiffs allege more than a mere reduction in the value of the stock and loss of opportunity to sell their shares at a good price. We are satisfied plaintiffs' claims are not derivative but are individual claims. The judge erred in dismissing counts VII and VIII.
Our conclusion that plaintiffs have stated individual and direct claims against defendants is based on our impression of the complaint as a whole and plaintiffs' theory of recovery based on the disparate impact of defendants' conduct. It should not be construed as precluding the possibility that the allegations ultimately may not be supported by the proofs. However, at this stage of the proceedings, we cannot state as a matter of law that the disparate impact of defendants' artificial deflation of the value *180 of the stock, which benefitted the majority shareholders at the expense of the minority, does not create a basis for asserting individual claims for which plaintiffs are entitled to relief.

II.
Plaintiffs' claim of waste, however, cannot be supported by their disparate impact theory. Corporate waste affects all stockholders equally and does not constitute a "special injury" to some stockholders but not others. The judge correctly held that this claim must be brought as a derivative action. Plaintiffs' reliance on Vincel v. White Motor Corp., 521 F.2d 1113 (2d Cir.1975) is misplaced. Plaintiffs were not forced to sell their stock at a depressed price and, in fact, made no such allegation in their complaint. Rather, they elected to dissent from a subsequent corporate reorganization, resulting in an appraisal proceeding which will determine the fair value of their shares. The two circumstances are distinguishable on their face. In Traylor v. Marine Corp., 328 F. Supp. 382 (E.D.Wis. 1971), plaintiffs, minority shareholders, were allowed to bring an action individually for fraudulent sale of corporate assets because they claimed that "particular stockholders profited and other stockholders were wronged." Id. at 384. Here, by contrast, plaintiffs' claim for waste of corporate assets does not assert any right individual to them based on a disparate impact theory. Plaintiffs' claim of waste was properly dismissed.

III.
Plaintiffs contend that the judge erred in determining that their election to dissent under the appraisal statutes, N.J.S.A. 14A:11-1 to -11, precluded them from bringing their individual claims.
N.J.S.A. 14A:11-5(2) provides:
The enforcement by a dissenting shareholder of his right to receive payment for his shares shall exclude the enforcement by such dissenting shareholder of any other right to which he might otherwise be entitled by virtue of share ownership, except as provided in subsection 14A:11-4(2) and except that this subsection shall not *181 exclude the right of such dissenting shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is ultra vires, unlawful or fraudulent as to such dissenting shareholder.
This subsection follows closely the language of section 623(k) of the New York Business Corporation Law. See Pachman, Title 14A Corporations, Commissioners' Comment  1968 on N.J.S.A. 14A:11-5 (1994).
New York has limited the statutory exception permitting a dissenter to seek judicial relief outside the appraisal proceeding to those seeking equitable relief based on fraud. See Breed v. Barton, 54 N.Y.2d 82, 83, 444 N.Y.S.2d 609, 610, 429 N.E.2d 128, 129 (1981). Accord, Burke v. Jacoby, 981 F.2d 1372, 1374 (2d Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993).
Other jurisdictions, interpreting statutes dealing with dissenting shareholder rights, have allowed stockholders to bring actions for fraud and breach of fiduciary duty, despite an appraisal remedy. See Kademian v. Ladish Co., supra, 792 F.2d at 628-30. See also Dowling v. Narragansett Capital Corp., supra, 735 F. Supp. at 1116.
In Mullen v. Academy Life Ins. Co., 705 F.2d 971, 974 (8th Cir.), cert. denied sub. nom. Beausang v. Mullen, 464 U.S. 827, 104 S.Ct. 101, 78 L.Ed.2d 105 (1983), the court, citing Berkowitz v. Power/Mate Corp., 135 N.J. Super. 36, 43-50, 342 A.2d 566 (Ch. Div. 1975), where our chancery court permitted minority shareholders to sue the majority for breach of fiduciary duty in connection with a merger, noted that New Jersey had not adopted the position of Breed v. Barton, supra. Thus, the Mullen court concluded: "New Jersey would be more likely to follow the lead of courts which have held appraisal not to be exclusive ... even where the applicable statutes apparently specify appraisal as the exclusive remedy for dissenters." Mullen, supra, 705 F.2d at 974.
We need not resolve this question here. As plaintiffs point out, they are not seeking a second remedy for the wrongs that are the subject of the appraisal proceeding. They argue that the two suits are not duplicative because their causes of action in this *182 litigation are based on events that pre-dated their cause of action in the appraisal proceeding and are unrelated to the corporate restructuring that triggered the appraisal proceeding. See Yanow v. Teal Indus., Inc., 178 Conn. 262, 422 A.2d 311 (1979) (plaintiffs are not precluded from bringing "claims antecedent to and unrelated to the merger," notwithstanding statute makes appraisal the exclusive remedy.)
While N.J.S.A. 14A:11-5(2) prohibits a dissenting shareholder from enforcing "any other right to which he might otherwise be entitled by virtue of share ownership," arguably, "any other right" means a "right" involving the subject of the dissent. To conclude otherwise, would deprive plaintiffs of any remedy for antecedent claims of personal injury.
We note also that the "Source or Reference" following N.J.S.A. 14A:11-5 refers to "Model Act: § 74 (1960)." In its 1984 revision, the "Model Act," Model Business Corp. Act § 13.02(b) (1984), addresses the problem of whether an appraisal action is exclusive, stating: "A shareholder entitled to dissent and obtain payment for his shares under this chapter may not challenge the corporate action creating his entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation." (emphasis added). Arguably, this section would allow a dissenting shareholder to challenge antecedent corporate action because the provision appears only to prohibit challenges to corporate action "creating [the shareholder's] entitlement" to dissent and appraisal. Accordingly, we are satisfied that N.J.S.A. 14A:11-5 does not bar plaintiffs from seeking a remedy in this action which is based on alleged antecedent, unrelated events.

IV.
Plaintiffs contend that the judge erred in determining that their allegation of fraud was "absolutely vague." R. 4:5-8 requires that in allegations of fraud or misrepresentation, "particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable." The judge said:

*183 There isn't a single fact that anyone could probably identify that's being asserted. Only conclusions.
Reliance is made upon events of the distant past. The plaintiffs are asserting they were lulled into not doing something earlier by these wrongful acts. What the wrongful acts are were not stated and why they were lulled and what they would have done is not stated. There are no dates, no specifics....
We disagree.
In opposing the motion to dismiss, as noted earlier, plaintiffs were "entitled to every reasonable inference of fact," Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31, and an "indulgent reading of the allegations in the complaint." Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260, 274, 527 A.2d 875 (1986). Giving plaintiffs the indulgent reading to which they are entitled, our review of the complaint persuades us plaintiffs have adequately set forth all the elements of a cause of action for fraud, see Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 51-52, 477 A.2d 1224 (1984), breach of fiduciary duties and negligent misrepresentation. Accordingly, we need not address plaintiffs' request for leave to amend the complaint.
In sum, bearing in mind the appropriate standard of review at this early stage of the proceedings, we conclude the complaint states a cause of action for damages based on breach of fiduciary duty, negligent misrepresentation, and fraud. Plaintiffs' RICO claim may also proceed. In the absence of any specific substantive findings by the Law Division concerning the sufficiency of the cause of action, we make no observations concerning that subject. We reverse the dismissal of these claims under R. 4:6-2(e). We affirm the dismissal of the claim alleging waste.
Reversed in part, affirmed in part, and remanded.