824 A.2d 174 (2003)
360 N.J. Super. 599
Isabel S. WEIL, Plaintiff-Appellant,
v.
EXPRESS CONTAINER CORPORATION, a New Jersey corporation; Robert Brier; Sea Coast Packaging Corporation, a New Jersey corporation; Express Container L.L.C., a North Carolina limited liability company; William D. Lipkind, individually and as trustee of the 1990 Isabel S. Weil Trust, the 1990 Stephen J. Weil Family Trust, the 1991 Stephen J. Weil Family Trust and the Stephen J. Weil 1997 Family Trust; Paul M. Petigrow; Lampf, Lipkind, Prupis, Petigrow & Labue, P.C., a New Jersey professional corporation; MS Ackerman & Co., L.L.P., a New Jersey limited liability partnership; Morton Ackerman; Bruce Nadler; Peter W. Till; Goldstein, Till & Lite, a New Jersey partnership; Goldstein, Lite & Depalma, a New Jersey partnership; Andrew J. Goldstein; Allyn Z. Lite; Joseph J. de Palma; and Nancy Lem, Defendants, and
Stephen J. Weil; Amy R. Weil, individually and as trustee of the Stephen J. Weil 1996 Family Trust; Albert M. Weil, individually and as trustee of the Albert M. Weil Living Trust; Marc E. Berson; Battleground Realty, L.L.C., a North Carolina limited liability company; and Wilson Fidelco Realty, L.P., a New Jersey limited partnership, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted February 4, 2003.
Decided May 21, 2003.
*177 Schrader & Schoenberg, for appellant (David A. Schrader, New York City, on the brief).
Stern, Greenberg & Kilcullen, Roseland, for respondents Stephen J. Weil, Amy R. Weil (individually and as trustee of the Stephen J. Weil 1996 Family Trust) and Battleground Realty, L.L.C. (Edward S. Nathan, of counsel and on the brief).
Drinker Biddle & Shanley, Florham Park, for respondent Albert M. Weil (Richard E. Brennan and Philip E. Mazur, on the brief).
Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, Roseland, for respondents Marc E. Berson and Wilson Fidelco Realty, L.P. (Burton L. Eichler, of counsel and on the brief).
Before Justice WALLACE, JR., (temporarily assigned) and Judges CIANCIA and HOENS. *175
*176 The opinion of the court was delivered by HOENS, J.A.D.
Plaintiff Isabel S. Weil appeals from three separate Chancery Division orders entered August 3, 2001. The orders granted summary judgment in favor of Albert Weil (Isabel's late father), Stephen Weil (Isabel's brother), his wife Amy Weil (both individually and in her capacity as trustee of the Stephen J. Weil 1996 Family Trust), and Battleground Realty L.L.C. (the Weil defendants), and Marc E. Berson and Wilson Fidelco Realty, L.P. (the Berson defendants).[1] We affirm.
*178 While the procedural history of the litigation and the factual assertions raised by Isabel are both lengthy and complex, we need only summarize them for purposes of this appeal. Isabel commenced this litigation in 1997 alleging that she was a minority shareholder in two corporations, Express Container Corporation (Express) and Sea Coast Packaging Corp. (Sea Coast). She asserted that the foregoing defendants, along with another individual who had served as the controller for Express, two groups of lawyers and their law firms, and several accountants and their accounting firm had engaged in acts of minority shareholder oppression, fraud, equitable fraud, conspiracy to defraud, breach of fiduciary duty, tortious interference with prospective economic advantage, RICO violations and, as to the attorneys, legal malpractice. Her claims arose out of a series of events that she contended were designed to and had the effect of oppressing her rights as a minority shareholder.
The factual background of the claims is as follows. Express was formed in 1922 by Evelyn Weil, the wife of Albert and the mother of Stephen and Isabel. Express was engaged in the corrugated cardboard business. Albert began working for the company in 1939 and became the president in 1964. In the late 1960's Sea Coast was formed to serve as a sales organization for Express in connection with certain government contracts. Thereafter, Sea Coast also purchased trailers and tractors and leased them back to Express.
Stephen began working for Express in the late 1970's, eventually replacing Albert in the 1980's. Through a lengthy series of transfers of voting and non-voting shares of the stock in the companies, and in compliance with the wishes expressed by Evelyn in her will, eventually Stephen owned 75% of the outstanding shares and Isabel owned the remaining 25% of the shares of the Express and Sea Coast stock. As part of that series of transactions, and in particular when he retired from active involvement in the business, Albert arranged to be paid a consultant's fee and to receive other distributions from the earnings of the corporations. Stephen actively ran the businesses and received a salary for his efforts. His wife, who worked in the business in a limited capacity, was also paid a small salary. Throughout the time prior to the commencement of the litigation, Isabel, who played no active role in the business and who did not in any way participate in or contribute to the management of either company, was paid a monthly distribution. While the distribution was supposedly paid in consideration of her ownership interest in the companies, in fact she was paid a monthly distribution even prior to having any ownership interest in the businesses.
Stephen and Isabel were never on particularly good terms and Stephen began trying to buy out Isabel's interest in the companies even before she became a shareholder. He offered her various sums on various terms beginning in 1990, but Isabel refused to accept any of his offers. In 1995, Stephen hired defendant Marc Berson to help move the companies toward greater profitability. Berson believed that the business was in poor financial health and needed an immediate cash infusion to survive, so he suggested that Express enter into a sale and leaseback agreement with Wilson Fidelco, an entity to be created for that purpose with another investor. In connection with that series of proposals, the real property in Newark owned by Express was appraised and a number of potential transactions were structured based on several appraisals. Isabel was dissatisfied because she believed that all of the appraisals undervalued the land and its improvements. While the proposed Wilson Fidelco transaction generated a number *179 of agreements between Stephen and others, including Berson, to the exclusion of Isabel, eventually Stephen decided that the deal was not advantageous to Express and he terminated the discussions entirely. It is undisputed that during this time, Berson did not know that Isabel had any interest in the companies and that when he learned of her shareholder status, he advised Stephen to treat her fairly.
The financial picture for Express continued to be troubled and Stephen sought other opportunities to improve the business. In 1995, he made a new buy-out proposal to Isabel which she found to be unacceptable because it offered her less than the prior offer. Stephen insisted that the value of the company was reduced, but Isabel believed that information was false and eventually she rejected the 1995 offer as well. At about the same time, Berson advised Stephen that all of the distributions to stockholders should stop because of the company's financial distress. Stephen therefore decreased, and later ended entirely, the payments to Isabel, and he reduced the payments then still being made to Albert as well. Stephen also terminated payments on a leased vehicle driven by Isabel at about the same time. During this time frame, Isabel recorded a series of telephone conversations she had with Stephen during which he threatened to issue more stock to dilute her shares if she continued to refuse to accept his buy-out offer.
In 1996, Stephen decided to build a plant in North Carolina in order to have a production facility near one of Express's largest customers. As a part of that decision, he formed Express Container L.L.C. (Express L.L.C.) and Battleground Realty L.L.C. (Battleground). The plan was that Express L.L.C. would operate the business in North Carolina, while Battleground would own the plant and the property on which it was to be built. The funds for this venture came from the Stephen J. Weil 1997 Family Trust and interest in these new entities was given to the Trust by Express L.L.C. and Battleground. Stephen did not arrange for an interest to be given to Isabel because time was short and he was fearful that she would interfere. Shortly after the formation of these entities, however, Stephen, through counsel, offered Isabel the opportunity to participate in the transaction in accordance with her stock ownership in Express, in exchange for her personal guarantee of certain loans that had been required as a part of the transaction. Isabel did not opt to provide a guarantee and as a result, she was not given any interest in the new entities.
In 1997, after Isabel filed her complaint, Stephen again offered to buy her interest in the companies through a buy-sell agreement. It appears that she did not respond to that offer. In addition, shortly after the complaint was filed, the Chancery Division judge appointed an appraiser to evaluate Isabel's interest in Express and Sea Coast and to separately appraise Express L.L.C. and Battleground, and he ordered that the distributions Isabel had been receiving be reinstated. The appraiser submitted his report in November 1997. Express filed for bankruptcy in March 1998, as a result of which the pending state action was removed to federal court. Sea Coast and Express L.L.C. also filed for bankruptcy and all of the proceedings were consolidated. Isabel objected to the reorganization plan in the Bankruptcy Court. As a part of that plan, the assets of Express and Sea Coast were to be sold to Greater New York Box, which subsequently hired Stephen as a salesman.
In response to Isabel's objection and in confirming the reorganization plan, the bankruptcy judge determined that, as a *180 shareholder, Isabel had certain derivative claims that were assigned in the bankruptcy to Greater New York Box and that she could only pursue those claims against that entity. At the same time, he held that her personal claims would survive the bankruptcy and could be asserted in the state court litigation, which he then remanded to the Chancery Division. He specifically identified the claims that qualified as personal claims and that would survive the bankruptcy. Isabel thereafter filed an amended complaint in the Chancery Division action to assert those claims. It is the Chancery Division judge's orders granting summary judgment on those remanded claims that are now before us on appeal.
The brief filed on Isabel's behalf raises the following points:
I. PLAINTIFF'S CLAIMS WERE PRESERVED IN THE EXPRESS BANKRUPTCY.
II. ISABEL'S CLAIMS ARE INDIVIDUAL (NON DERIVATIVE) CLAIMS.
III. ISABEL HAS A RIGHT TO PURSUE HER CLAIMS FOR BREACH OF FIDUCIARY DUTY AND UNDER THE MINORITY SHAREHOLDER OPPRESSION STATUTE DIRECTLY AGAINST STEPHEN.
IV. THE COURT BELOW ERRED IN CONCLUDING THAT THERE WERE NO DISPUTED ISSUES OF MATERIAL FACTS.
V. ISABEL IS A MINORITY SHAREHOLDER ENTITLED TO RELIEF PURSUANT TO N.J.S.A. 14A:12-7.
VI. THERE ARE BROAD REMEDIES AVAILABLE PURSUANT TO N.J.S.A. 14A:12-7.
VII. PLAINTIFF HAS SUSTAINED A BASIS FOR FRAUD, EQUITABLE FRAUD, AND TORTIOUS INTERFERENCE AGAINST THE EXPRESS DEFENDANTS.
VIII. AMY WEIL WAS A DIRECT BENEFICIARY OF DIVERTED ASSETS FROM EXPRESS AND PARTICIPATED IN THE TRANSACTIONS.
IX. ALBERT WEIL WAS A DIRECT BENEFICIARY OF DIVERTED ASSETS FROM EXPRESS AND PARTICIPATED IN THE TRANSACTIONS.
X. BERSON WAS A DIRECT BENEFICIARY OF DIVERTED ASSETS FROM EXPRESS AND PARTICIPATED IN THE TRANSACTIONS.
I
The first six points included in the appeal relate to Isabel's claims against her brother Stephen arising out of her status as a minority shareholder in Express and Seacoast. We need not address these points individually, however, because all of them center on the question of the statutory remedies available to any minority shareholder. For purposes of this appeal, we accept the designation by the bankruptcy judge of those elements of the original complaint that are properly characterized as personal rather than derivative claims and agree in general that they were therefore appropriately remanded to the Chancery Division. That recognition, however, does not necessarily support the conclusion that Isabel would have us reach, namely that the survival of the claims transformed them into personal liabilities of her brother.
The statute governing rights of oppressed minority shareholders, N.J.S.A. 14A:12-7, includes no form of relief of the *181 type Isabel asserts should be made available to her. Indeed, all of the potential forms of relief referred to in the statute contemplate the continued existence, or in an appropriate case, the dissolution of the corporation in question. See, e.g., N.J.S.A. 14A:12-7. Our Supreme Court, in an exhaustive analysis of the meaning and history of the statute and its remedies made this focus clear. See Brenner v. Berkowitz, 134 N.J. 488, 634 A.2d 1019 (1993). While the Supreme Court noted that involuntary dissolution of the corporation and forced buy-out of the minority shareholder's interest are not the statute's exclusive remedies, we need not here reiterate the list of other remedies that a court of equity is authorized to impose. Id. at 510-15, 634 A.2d 1019; see N.J.S.A. 14A:12-7(1); N.J.S.A. 14A:12-7(8). Our review of those potential remedies demonstrates that each contemplates the existence of an on-going or successor corporation. See, e.g., Balsamides v. Protameen Chems. Inc., 160 N.J. 352, 734 A.2d 721 (1999); Strasenburgh v. Straubmuller, 146 N.J. 527, 683 A.2d 818 (1996); Grato v. Grato, 272 N.J.Super. 140, 639 A.2d 390 (App.Div.), certif. denied, 138 N.J. 264, 649 A.2d 1285 (1994). While majority shareholders have sometimes been ordered to buy out an oppressed minority shareholder, that remedy has always been imposed in the context of an existing or successor entity. No precedent cited suggests that, following a dissolution of the corporation in bankruptcy, any remedy can appropriately be asserted against a former majority shareholder personally.
While we held in Walensky v. Jonathan Royce Int'l, Inc., 264 N.J.Super. 276, 624 A.2d 613 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993), that the court of equity "undoubtedly has the authority and flexibility to fashion a remedy" if the specific remedies provided in the statute are inadequate, id. at 279, 624 A.2d 613, that general pronouncement does not support the conclusion that the oppressed minority shareholder is entitled to a remedy against the majority shareholder individually. Nor is there any reason why we should so vastly expand the statutory remedies in this matter. Isabel's assertion here that we should interpret the remedies available to include personal liability of a former shareholder is an expansion more significant than we are persuaded is ours to direct.
Nor is our analysis inconsistent with the determination of the bankruptcy judge that certain of the causes of action were personal and could be pursued on remand. At most, the bankruptcy judge determined that Isabel's personal, as opposed to her derivative, claims had not been extinguished by the operation of the Bankruptcy Act. He did not and could not decide whether our statute imposes limitations on the remedies available to Isabel for those personal claims. The Chancery Division judge's reference, therefore, to Isabel's surviving right on remand as "hollow" was an entirely apt description of the effect of the statutory limitations on her remedies. We decline to hold that the oppressed minority shareholder statute includes the broad remedies against individuals sought here and we concur with the determination of the Chancery Division judge that summary judgment in favor of the Weil defendants on the statutory oppressed minority shareholder claims was therefore appropriate.

II
Isabel also asserted a claim against her brother Stephen for breach of fiduciary duty. While such a claim is ordinarily derivative and not personal, see Strasenburgh v. Straubmuller, 284 N.J.Super. 168, 175-80, 664 A.2d 497 (App. *182 Div.1995), aff'd in part, 146 N.J. 527, 683 A.2d 818 (1996), the claim can be considered to be personal if the oppressed minority shareholder can establish an injury distinct from the injury suffered by the shareholders in general. Ibid. For the purposes of this appeal, we presume that this claim rests on either the allegations that Isabel's distributions were reduced and then terminated or that she was excluded from participating in the Express L.L.C. and Battleground transactions. In either event, we concur with the analysis of the Chancery Division judge that summary judgment was appropriate. Simply put, Isabel cannot demonstrate that the reduction in distributions to her created a distinct injury sufficient to support a personal cause of action because it is uncontroverted that at the same time, all of the distributions were reduced and eventually terminated. The only payments that continued were salary and consulting fees paid to Stephen and to Albert for services that each continued to perform. Because Isabel performed no services, and because the payments to her were no different from the unearned distributions to the others that were ended, she cannot demonstrate any injury that is particular to her. Similarly, she was offered the opportunity to participate in the transactions involving Express L.L.C. and Battleground in a manner not unlike the personal contribution Stephen made to those entities and declined to do so. The Chancery Division judge correctly concluded, therefore, that neither factual basis for the breach of fiduciary duty claim was sufficient to support a recovery.

III
Isabel also seeks relief from the Weil defendants based upon common law theories of fraud, equitable fraud and tortious interference with prospective economic advantage. In support of these allegations, she points to Stephen's efforts to buy her out and his participation in the proposed transaction with Wilson Fidelco. We concur with the Chancery Division judge in his rejection of these claims as well.
Legal fraud requires demonstration of five elements: (1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff. Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981). Equitable fraud is similar, but does not require knowledge of the falsity and an intent to obtain an undue advantage. Enright v. Lubow, 202 N.J.Super. 58, 72, 493 A.2d 1288 (App.Div.1985), certif. denied, 104 N.J. 376, 517 A.2d 386 (1986). In either case, fraud is never presumed, but must be established by clear and convincing evidence. Albright v. Burns, 206 N.J.Super. 625, 636, 503 A.2d 386 (App.Div.1986).
As the Chancery Division judge noted, viewing the facts most favorably to Isabel, there are no grounds on which to permit her to proceed against the Weil defendants on either theory. At best, she contends that her brother repeatedly made false statements to her about the financial condition of the companies in an effort to buy out her interest at an artificially low price. Even if all of her allegations about the statements that he made and the motivations that he had are true, however, the simple fact is that she rejected each and every effort he made to buy her shares. As a result, she never relied on the truth of any statements he made concerning the value of her shares and never altered her position to her detriment. Her inability to demonstrate that she relied on the statements she attributes to Stephen to her *183 detriment is fatal to her claims for legal and equitable fraud. We therefore agree with the analysis of the Chancery Division judge that the Weil defendants were entitled to summary judgment in their favor on the claims for legal and equitable fraud.
We also concur with the Chancery Division judge in his rejection of Isabel's claim for tortious interference with a prospective economic advantage. To establish that cause of action, the plaintiff must demonstrate some reasonable expectation of economic advantage, that the defendant's actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse, a reasonable probability that the plaintiff would have obtained the anticipated economic benefit and that the injury caused the plaintiff damage. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751-52, 563 A.2d 31 (1989).
Fundamental to this cause of action is the requirement that the claim be directed against defendants who are not parties to the contractual relationship. Van Natta Mech. Corp. v. Di Staulo, 277 N.J.Super. 175, 182, 649 A.2d 399 (App.Div.1994); see MacDougall v. Weichert, 144 N.J. 380, 403-04, 677 A.2d 162 (1996). Inasmuch as Stephen at all times relevant was a party to the corporate relationship with Isabel, an action for tortious interference cannot be brought against him or the other Weil defendants.

IV
Similarly, Isabel's claim against Amy for civil conspiracy was appropriately rejected by the judge. A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means a principal element of which is to inflict a wrong against or injury upon another, together with an act that results in damage. Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J.Super. 337, 364, 633 A.2d 985 (App.Div.1993), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). While the unlawful agreement need not be expressed, and while the participants need not know all the details of the plan designed to achieve the objective or possess the same motives, they must share the general conspiratorial objective. Morgan v. Union Cty., supra, 268 N.J.Super. at 365, 633 A.2d 985. To establish a conspiracy, the plaintiff must demonstrate that there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences. Ibid.
Both in her proofs before the Chancery Division judge and here, Isabel failed to identify any act or any behavior that supports the conclusion that Amy participated in a conspiracy to harm her. We agree with the Chancery Division judge that the absence of any such evidence is fatal to the conspiracy claim as well.

V
Isabel's appeal from the grant of summary judgment in favor of Albert Weil on the claims she asserted in the amended complaint is equally without merit. Her argument that she can assert claims against her father for relief under the minority shareholder statute is flawed for all of the reasons that her similar argument directed against her brother fails. Beyond that, her attempt to assert the claims against Albert cannot proceed because he was not in any sense an oppressing majority shareholder at any relevant time.
*184 As the Chancery Division judge pointed out, by the time of the events of which Isabel complains, Albert had withdrawn from any active participation in the corporations and thus could not be liable to her. In fact, he gave or otherwise transferred shares to her during the time when she asserts she was being oppressed. To the extent that she now objects to the fact that Albert received compensation from the corporations, the objection is barred on the ground that she received sums from the corporation during the same time frame. Unlike her father, who continued to perform consulting services for the corporations he once ran, Isabel never performed any services at all and gave nothing of value to the corporations in exchange for significant sums paid to her on a monthly basis. Her participation in that distribution plan when she perceived it to be to her advantage prevents her from now objecting to it. See, e.g., Brenner v. Berkowitz, supra, 134 N.J. at 510, 634 A.2d 1019 (acquiescence or participation in misconduct prevents claim of oppression).
Isabel's claims against her late father for legal and equitable fraud, for tortious interference, and for civil conspiracy are all barred as well, albeit for reasons different from those that bar her claims against Stephen. Although she submitted a lengthy brief and a voluminous appendix, she has pointed to no fact that would possibly form the basis for any of these claims against Albert. Her assertion that the Chancery Division judge erred is without merit.

VI
We need devote little further attention to Isabel's claims against Berson and Wilson Fidelco. As a director of Express for a brief time who had but one vote, and therefore as one who never had the ability to exert any control in the corporations, Berson is not an appropriate target of Isabel's claims for oppressed minority shareholder relief. As for the allegations of legal and equitable fraud, Isabel's concession that she never asked Berson for any information about the corporations is fatal to any demonstration that he made any false statement to her. As for her allegations of tortious interference, to the extent that she seeks relief as a result of the proposed Wilson Fidelco transaction, the fact that the proposed transaction was abandoned is fatal to her recovery, for it demonstrates conclusively that neither Berson nor Wilson Fidelco deprived her of any corporate opportunity.

VII
In summary, we affirm the decision of the Chancery Division judge granting summary judgment against plaintiff and in favor of defendants Stephen J. Weil, Amy R. Weil, individually and as trustee of the Stephen J. Weil 1996 Family Trust, Battleground Realty, L.L.C., Albert M. Weil, individually and as trustee of the Albert M. Weil Living Trust, Marc E. Berson and Wilson Fidelco Realty, L.P. on all of the counts against each of them in this litigation.
NOTES
[1] On the same date, the Chancery Division judge also granted summary judgment in favor of attorneys William D. Lipkind, Paul M. Petigrow and their law firm, Lampf, Lipkind, Prupis, Petigrow & Labue, P.C. (the Lampf, Lipkind defendants). Although Isabel filed a notice of appeal which included that order as well, the issues respecting the Lampf, Lipkind defendants were thereafter amicably resolved.