**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0406-24

DARLENE EPPS,

    Plaintiff-Appellant,

v.

DGMB CASINO, LLC d/b/a
RESORTS CASINO HOTEL
and MILLIE SALERNO,

    Defendants-Respondents.

_____

Submitted November 10, 2025 – Decided January 8, 2026

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3039-21.

Forman, Cardonsky & Tsinman, LLC, attorneys for appellant (Samuel Tsinman, on the briefs).

Cooper Levenson, PA, attorneys for respondents (Jennifer B. Barr, on the brief).

PER CURIAM

This matter concerns plaintiff Darlene Epp's claims under the New Jersey Law Against Discrimination ("LAD"), the New Jersey Consumer Fraud Act ("CFA"), and for common law fraud[1] against defendants DGMB Casino, LLC d/b/a Resorts Casino Hotel and Millie Salerno, a casino host[2] employed by DGMB. The trial court granted summary judgment to defendants dismissing all plaintiff's claims with prejudice. Based on our review of the record and the application of the relevant legal principles, we affirm.

I.

The following recitation of facts were taken in a light most favorable to plaintiff. Rule 4:46-2. As presented in her briefing, plaintiff is an African-American woman, who for decades, was a regular patron of defendant at its Atlantic City casino hotel. DGMB does business as Resorts Casino and operates a "Player Rewards" program, which assigns tier card status to participating guests according to the number of tier points accumulated through a guest's gambling activity. The card status levels and required tier points are as follows: Premiere, 0 tier points; Epic, 100 tier points; Paramount, 600 tier points;

---

[1] Plaintiff's complaint also pled age discrimination and breach of contract claims, but neither are the subject of this appeal.

[2] A casino host acts as a concierge to assist player/guest in making reservations, redeeming promotional offers, receiving comps, and other services.

A-0406-24

Paramount Plus, 1,250 tier points; and Red Carpet, 2,500 tier points. Tier points are earned based on the amounts wagered and higher tiers convey enhanced benefits and promotional offers, such as complimentary rooms, dining, entertainment, and free play money.

Plaintiff regularly accumulated points and advanced through the different Player Rewards tiers, ultimately achieving Red Carpet card status in 2019 for the annual period beginning March 12, 2019. Defendant's promotional materials for the Player Rewards program states, "to remain in your current Star Card level you must maintain the tier points above." The program rules make clear that all rewards and status are "based on play," with both generic and specific language reserving defendant's right to change, modify or revoke offers at its "management's discretion" at any time and without prior notice. The promotional materials also caution that "abuse of offers may result in loss of current and/or future offers."

In June 2019, after achieving Red Carpet status, plaintiff alleged when she entered defendant's VIP room, she was told by an unidentified employee that she was the "youngest Black card player." She alleges that the other employees looked at her as though they had "seen a ghost" and she felt unwelcomed. During the weekend of June 28, 2019, plaintiff claimed she had two telephone

3

interactions with Salerno, her assigned casino host. The first interaction concerned being assigned a smoking hotel room despite plaintiff's asthma, and the other concerned not receiving her expired "birthday money" promotional offer. While plaintiff alleges that Salerno was aggressive during their phone call, Salerno arranged for plaintiff's room to be changed, and she re-offered plaintiff's birthday bonus. The record reflects these two conversations are the only instances of direct contact between plaintiff and Salerno, and they have never met in person.

Unknown to plaintiff, her account activity was being monitored by defendant's Director of Financial and Marketing Analysis, Jason DiPietro, due to a shift in her play pattern. While plaintiff had previously wagered her own funds at high levels, during the period in question she increasingly relied on promotional free play. As a result, her account was automatically flagged by defendant's computer system for aberrant activity; specifically, for redeeming significant amounts of free play offers while playing minimally with her own money. The computerized report is based solely on account number and gambling data, and does not show the players name, demographics, race, or age. Defendant does not maintain race demographic data for its players. At the time,

A-0406-24

plaintiff had reserved casino offers for rooms every weekend in June 2019 using her Red Carpet reward status.

Following the flagging of her account, DiPietro reviewed the report generated for her account, and saw a "trend of numbers" suggesting that plaintiff might be trying to recoup some of the money she had previously lost by gambling with promotional, free play, or playing with the bare minimum of her own money.

DiPietro informed Salerno and his supervisor, Domenick Mariano, via email that plaintiff's play had declined and she was still accepting free play offers. Mariano instructed DiPietro that if plaintiff's play pattern did not improve and return to previous levels, her account should be downgraded and eligibility for promotional offers revoked; meanwhile, her account continued to be monitored throughout June 2019. Plaintiff was not informed of this development, nor had she met or spoken with DiPietro or Mariano.

In July 2019, plaintiff discovered that her Red Carpet Star card was blocked, and her account was on "promotional ban" status; meaning she no longer received Red Carpet promotional offers. When plaintiff reported this change, she was issued a lower-tier Star Card for Paramount status, and staff explained to her that after earning at least five additional tier points, her

A-0406-24

eligibility for Red Carpet offers could be reviewed and restored. Plaintiff continued to gamble at the casino using her new Star Card. Plaintiff was never physically banned from the hotel or casino and continued to be eligible for lower tier play and promotions.

In April 2021, plaintiff filed a civil complaint against defendants. The complaint asserted claims under the LAD, based on racial discrimination, the CFA and for common law fraud. After the conclusion of discovery, defendants moved for summary judgment seeking dismissal of all counts in her complaint. Plaintiff filed opposition. After considering the briefing and arguments, the court granted summary judgment to defendants and dismissed plaintiff's complaint with prejudice in its entirety.

In its oral decision, the court found no genuine issues of material fact existed concerning the following. The record did not show any evidence that plaintiff was denied benefits because of her race. The casino did not track players' racial or age data in its rewards system. Plaintiff's assertion that defendants knew her race because of her voice on the phone or being told by an unnamed person that she was the "youngest Black card player" was unsupported by any concrete evidence. The defendant presented unrebutted evidence, including testimony and written policy documents that plaintiff's level of

6

rewards was reduced solely due to her failure to maintain the required level of gambling activity, per the standard, automated criteria. Defendant's internal emails and witness testimony indicated decisions were made on play data alone, without reference to personal demographics.

The court further found there was no evidence of discriminatory animus by defendant. Plaintiff's subjective feelings of being treated unfairly or experiencing nastiness were deemed insufficient. The court noted there were no overt or implied racist comments by defendant's decision-makers, and any ambiguous remarks from non-decisionmakers lacked the necessary link to the adverse action. Plaintiff produced no evidence on how similarly situated players of different races were treated, nor statistical or comparator data.

Concerning the CFA and common law fraud claims, the court found the promotional materials and mailers, which plaintiff admitted to reviewing, had clearly provided in writing that rewards status, offers, and benefits were subject to change based on continued qualifying gambling activity. Notices in the materials explicitly reserved the casino's right to change or revoke offers without notice and stated that rewards depended on ongoing play. The record showed plaintiff understood she had to maintain play levels because her rewards status had fluctuated previously. There was no evidence that false

7

representations or unconscionable omissions were made by defendants, or that the rules were applied differently to plaintiff.

The trial court further found plaintiff did not suffer ascertainable loss or damages as required by the CFA, because she was permitted to use previously earned offers, was not banned from the premises, and was only downgraded to a lower rewards tier. She voluntarily chose not to return to the casino. Because the court found DGMB was not liable, the court also dismissed the individual claims against Salerno under the aiding or abetting theory asserted by plaintiff.

On appeal, plaintiff contends she properly established claims under the LAD, CFA and for common law fraud because genuine issues of material fact existed in the record precluding summary judgment as to these claims.

II.

We review a judge's decision on a motion for summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). See also R. 4:46-2(c).

"[A]ppellate review of the grant [or denial] of summary judgment is limited to the record that existed before the motion judge." E.S. ex rel. G.S. v. Brunswick Inv. Ltd. P'ship, 469 N.J. Super. 279, 286 (App. Div. 2021); see Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963); Lebron v. Sanchez, 407 N.J. Super. 204, 213 (App. Div. 2009). We do not defer to the trial court's legal analysis or statutory interpretation. See RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

## A.

We first address plaintiff's contention the court erred by dismissing her LAD claims because genuine issues of material fact existed in the record showing the denial of promotional benefits were based on her race. Plaintiff asserts her race impacted defendant's decision to downgrade her reward tier citing the "youngest Black card player" statement from an unnamed employee, the unsettling looks of other employees and the confrontational phone call with Salerno.

"The 'overarching goal of the [LAD] is nothing less than the eradication "of the cancer of discrimination."'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005) (alteration in original) (quoting Fuchilla v. Layman, 109 N.J. 319,

9

334 (1988)).  "Because of its remedial purpose, the LAD should be construed liberally to achieve its aims."  <u>Zive</u>, 182 N.J. at 446.

N.J.S.A. 10:5-4 recognizes as a civil right the opportunity "to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . race, [] color [or] national origin[.]" To protect that right, N.J.S.A. 10:5-12(f)(1) declares it to be unlawful discrimination for:

> any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the race . . . of such person[.]
>
> [<u>Ibid.</u>]

N.J.S.A. 10:5-5(l) defines a "place of public accommodation" to include a "retail shop, store, establishment, or concession dealing with goods or services of any kind."  <u>Ibid.</u>

Under the LAD, "there is no single prima facie case that applies to all discrimination claims.  Instead, the prima facie elements of a claim vary depending upon the particular [ ] discrimination claim being made."  <u>Victor v. State</u>, 203 N.J. 383, 409-10 (2010).  To state a public accommodation NJLAD

A-0406-24

claim, a plaintiff must allege; (1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class.  N.J.S.A. 10:5-12(f); see L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ., 189 N.J. 381, 401-02 (2007).

"[T]he focal issue [in a public accommodation discrimination case] is whether defendant acted with an actual or apparent design to discourage present or future use of the public accommodation by plaintiff on account of her protected status."  Turner v. Wong, 363 N.J. Super. 186, 213 (App. Div. 2003).  Moreover, the "LAD is not limited to outright denial of access or service. . . . [I]t also renders unlawful any acts discriminating against any person in the furnishing of the public accommodation."  Id. at 212.

A "'plaintiff need not prove that [the protected characteristic] was the sole or exclusive consideration' . . . ; rather, he need only show 'by a preponderance of the evidence that it made a difference' in that decision."  C.V. by and through C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 317 (2023) (quoting Bergen Commercial Bank v. Sisler, 157 N.J. 188, 211 (1999) (internal quotation marks and citation omitted)).  Such evidence may be shown through either direct or

11

circumstantial evidence. <u>Smith v. Millville Rescue Squad</u>, 225 N.J. 373, 394 (2016) (citing <u>Sisler</u>, 157 N.J. at 208).

Plaintiff's LAD claim is based on the following: (1) an unnamed employee of defendant referenced her as the "youngest Black card player;" (2) Salerno mistreated her over the phone; (3) unnamed employees looked at her as if they had "seen a ghost;" and, thereafter, (4) she was banned from using her Red Carpet rewards status and her status was downgraded.

Defendants did not dispute that prongs one and two of plaintiff's prima facie LAD claim were met, admitting it is a place of public accommodation and plaintiff is a member of a protected class. Thus, plaintiff's claim rests upon prong three, whether plaintiff was denied equal treatment on the basis of her protected class. We conclude, as did the trial court, that even when viewing all facts in a light most favorable to plaintiff, the record does not support genuine issues of material fact exist concerning the third prong of the above enunciated test.

First, plaintiff's claim defendant violated the LAD because she was allegedly referred to as the "youngest Black card player" has no support in the record other than plaintiff's uncorroborated statement. Plaintiff's own deposition testimony is unclear as to whether she was referred to in the above

A-0406-24

manner or instead, as the "youngest red card player." Regardless, neither would give rise to an inference that her race was a factor in banning her from utilizing promotional offers or decreasing her card level benefits.

To support her arguments, plaintiff cites two cases where a defendant employee's comments satisfied the prima facie standard for a public accommodation LAD claim. In Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 217 (App. Div.), certif. denied, 166 N.J. 606 (2000) (a resort owner allegedly stated, "I don't want those kinds of people here," and "[y]ou shouldn't bring those of kinds of people here") and Turner, 363 N.J. Super. at 197 (store owner refused to provide an African American patron with a replacement accompanied by racial epithets).

However, the cited cases are factually distinguishable because the employee who allegedly made the statement here is an unidentified employee and plaintiff has failed to show the employee had any authority or control in decision-making policies for the defendant. "[C]omments by individuals outside the decision-making process are considered stray remarks, which on their own are inadequate to support an inference of discrimination." Grasso v. W. N.Y. Bd. of Educ., 364 N.J. Super. 109, 118 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004). However, "discriminatory comments made by one

13

with input into the decision-making process are not stray remarks." Ibid. We concur with the trial court that plaintiff failed to identify the employee or provide any evidence the employee had any decision-making authority for defendant for their alleged comments to be considered discriminatory.

In addition, no evidence in the summary judgment record showed any managerial employees (including Salerno, DiPietro or Mariano) knew plaintiff's race at the time her card benefits were denied/downgraded. Plaintiff attempts to draw such a connection because the employee in the VIP room saw plaintiff's race and because Salerno spoke with plaintiff on the phone, defendants must have known her race. Plaintiff does not provide any support for her belief that defendants, including Salerno, knew her race. In regard to whether Salerno should have known plaintiff's race because of their phone call, plaintiff only cites to her own subjective beliefs, which are insufficient to raise genuine issues to preclude summary judgment.

Further, the record is barren of any evidence that Salerno had any authority to invoke the promotional ban which plaintiff claims was the adverse discriminatory action. Both DiPietro's deposition and defendant's business records confirm that the decision to ban plaintiff from using promotional rewards were made by financial/marketing management, not by Salerno.

A-0406-24

Salerno was included on email exchanges about plaintiff's account once it had been flagged because she was plaintiff's assigned casino host, not because she had any authority to make this decision. Although Salerno responded to an email noting plaintiff's June weekend reservations, no evidence exists that she directed, authorized, or recommended the ban or downgrade.

In addition, the record is undisputed that a managerial decision was made to ban plaintiff's account based on a review of an automatic computer report. No dispute exists in the record to DiPietro's testimony that an automatic computer system originally flagged plaintiff's account based on changes in her play activity, and he did not have access to any information other than her play data and account number. Only after receiving this data did DiPietro advise Mariano and Salerno. No dispute existed in the record that plaintiff's demographic information, including her race, was not accessible to DiPietro and race was not referenced in any manner in any email exchange, any other communication, nor is there any evidence showing the promotional ban was based on anything besides plaintiff's level of play.

In reference to the aiding and abetting claims against Salerno, we note "it is unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the

15

NJLAD],' N.J.S.A. 10:5-12[(e)], and such conduct may result in personal liability." Tarr v. Ciasulli, 181 N.J. 70, 82-83 (2004). In order to hold an employee individually liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of their role as part of an overall illegal or tortious activity at the time that they provide the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. Id. at 84 (citations omitted). Since we have determined her employer, DGMB did not perform a wrongful act under the LAD, we conclude the court did not err in dismissing the aiding and abetting claim against Salerno.

B.

We next address plaintiff's contention that the dismissal of her common law fraud claim was error. Her claim was primarily based on defendant's lack of clarity and transparency in regard to the requirements needed to retain her Red Card status. Plaintiff contends because defendant's materials make no mention of the "theoretical loss" statistic, or provide rules on how to maintain her status, defendant committed common law fraud. The contention lacks merit.

To establish a claim of common law fraud, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2)

16

knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). Importantly, "fraud is never presumed."  Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003).  Instead, a plaintiff "must prove each element by 'clear and convincing evidence.'"  DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013) (quoting Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989)).  Our Rules of Court further require allegations of fraud or misrepresentation to show "particulars of the wrong, with dates and times if necessary[.]"  R. 4:5-8.

Plaintiff's argument largely relies on the lack of transparency in defendant's promotional materials and her own assertions regarding her play level.  She maintains because the promotional materials make no mention of defendant's "theoretical loss" statistic, and the promotional offer represented was not the actual offer, issues of material fact existed precluding the grant of summary judgment.

17

No dispute exists in the record that the written promotional materials in question specifically state "[a]buse of offers may result in loss of current and/or future offers" and confirm "offer[s are] subject to change" and "management reserves the right to cancel, revoke, amend or modify offers and/or promotions at any time and without any notice." Furthermore, the website explaining the program states that "[defendant] management is sole judge of abuse." Lastly, the materials inform would-be patrons that "[r]ewards are based on play." Ibid. While the materials are not explicit as to the exact levels of personal funded play that are required, nor do they mention "theoretical loss" as asserted by plaintiff, the materials explicitly provided the following key information: (1) abuse of offers may result in loss of current or future offers; (2) management reserves the right to cancel or revoke offers without notice; (3) management is the sole judge of abuse; and (4) rewards are based on play.

Plaintiff claims she "spent money . . . to maintain her annual level of play and retain her red card status as per the rules." However, she failed to address the amount of her own money spent compared to promotional funds she obtained from the reward program. Conversely, DiPietro testified, based on reports, plaintiff consistently took "triple digits of free play while gambling only single digits of her own money" after obtaining Red Carpet status. Additionally, in the

A-0406-24

email exchange discussing the review and change to plaintiff's account, Salerno confirmed that plaintiff had booked hotel rooms for every weekend in June 2019 using promotions she received; further emphasizing the large number of free promotions she was utilizing as compared to her low level of personally funded gambling activity.

We are satisfied the plain meaning reading of the promotional materials adequately disclosed that a player's card status was subject to change based on the player's abuse of the program and this determination was in the sole discretion of defendant. The record clearly demonstrates plaintiff was aware her rewards levels were based on her level of play. We conclude the promotional materials are clear that an abuse of promotional offers may result in a loss of card privileges and defendant has sole discretion to determine whether abuse has occurred.

Based on the above undisputed facts, no genuine issues of material fact existed in the record showing defendant made material misrepresentations under prong one of Banco Popular and summary judgment was appropriately granted dismissing her common law fraud claim.

C.

We now address plaintiff's claim under the CFA, which are based on the identical factual assertions pled in her common law fraud claim. A party asserting a claim under the CFA must establish: 1) unlawful conduct by the other party in connection with the sale or advertisement of a product; 2) an ascertainable loss on the part of the party asserting the claim; and 3) a causal relationship between the unlawful conduct and the ascertainable loss. Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 114-15 (App. Div. 2005). "Unlawful conduct" is either an affirmative act, knowing omission, or regulatory violation. See Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245 (2005); see also N.J.S.A. 56:8-2.[3] When the alleged violation is an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Ibid.; Gennari v. Weichert Realtors, 148 N.J. 582, 605 (1997). However, when the alleged fraud is considered an omission, a "plaintiff must show that defendant acted with

---

[3] "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-2.

knowledge, and intent is an essential element of the fraud." Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522 (1991).

The factual basis for plaintiff's CFA claim mirrors her common law fraud claim, i.e. defendant knowingly omitted its "theoretical loss" process and purposely failed to describe in detail the requirements to maintain red carpet status in its advertised promotion. Based on our determinations previously expressed above in Part IIB, we conclude the promotional offer here is not an unlawful practice under the CFA. We conclude no genuine issues of material fact exist for a reasonable jury to be able to find defendant intended to defraud plaintiff by knowingly omitting information in its promotional materials. Once again, we reiterate defendant's materials were clear that an abuse of promotional offers may result in the loss of present and future benefits and defendant had sole discretion to determine if abuse occurred.

We appreciate that plaintiff and other players would want to have more information about what levels of play were required to be maintained to keep Red Carpet status. Even so, defendant had no legal obligation to do so, and its practices and communications—although arguably ambiguous—were not fraudulent. Because plaintiff has failed to establish genuine material facts

21

existed under the first prong of the CFA, her claim fails. Based on the above determination, we deem the remaining prongs under the CFA as moot.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0406-24